# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GBD)(SN) |
|---|---|

This document relates to:
*Celestine Kone, et al. v. Islamic Republic of Iran*, No. 1:23-cv-05790 (GBD)(SN)

## NON-U.S. NATIONAL PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR FINAL JUDGMENT AS TO LIABILITY AND FOR PARTIAL FINAL JUDGMENT FOR DAMAGES AGAINST THE ISLAMIC REPUBLIC OF IRAN

ANDERSON KILL P.C.
Jerry S. Goldman, Esq.
Bruce E. Strong, Esq.
Alexander Greene, Esq.
1251 Avenue of the Americas
New York, NY 10020
Tel:     (212) 278-1000
Fax:     (212) 278-1733
Email:   jgoldman@andersonkill.com
         bstrong@andersonkill.com
         agreene@andersonkill.com

*Attorneys for Plaintiffs*

Dated:  New York, New York
        July 22, 2024

## <u>TABLE OF CONTENTS</u>

**Page**

(1)  PROCEDURAL BACKGROUND.................................................................................. 4

    A.  Applicable Orders ................................................................................ 4

    B.  Related Cases ...................................................................................... 5

    C.  Iran Was Duly Served and Default Was Duly Entered.......................... 7

(2)  THE COURT HAS SUBJECT-MATTER JURISDICTION OVER MOVING
    PLAINTIFF'S CLAIMS AGAINST IRAN UNDER JASTA............................ 8

(3)  IRAN IS LIABLE TO MOVING PLAINTIFF UNDER APPLICABLE
    COMMON LAW. ............................................................................................ 13

    A.  New York Law Applies ..................................................................... 14

    B.  Iran Is Liable to the Moving Plaintiff for Wrongful Death Under New
        York Law. ......................................................................................... 14

    C.  Iran Is Liable to Moving Plaintiff for Survival Under New York Law. ............... 16

(4)  The Court Should Enter Damages Awards Against Iran and in Favor of Moving
    Plaintiff in Amounts Previously Authorized........................................................ 17

    A.  Background ....................................................................................... 17

    B.  Estate Pain and Suffering Damages ................................................... 18

    C.  Estate Economic Damages................................................................. 19

    D.  Punitive Damages ............................................................................. 21

    E.  Prejudgment Interest ......................................................................... 22

(5)  CONCLUSION ............................................................................................... 24

i

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Armstead v. National RR Passenger Corp.*,
   954 F. Supp. 111 (1997) ........................................................................................................14

*Ashton v. al Qaeda Islamic Army*,
   02-CV-6977 (GBD)(SN) .................................................................................... *passim*

*Baker v. Socialist People's Libyan Arab Jamahirya*,
   775 F. Supp. 2d 48 (D.D.C. 2011) ....................................................................................22

*Bank of New York v. Yugoimport*,
   745 F.3d 599 (2d Cir. 2014) ...............................................................................................11

*Bauer v. Al Qaeda Islamic Army*,
   02-CV-7236 (GBD)(SN) .................................................................................... *passim*

*Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.*,
   137 S. Ct. 1312 (2017)..........................................................................................................9

*Cassirer v. Thyssen-Bornemisza Collection Found.*,
   596 U.S. 107 (2022)............................................................................................................13

*Cassirer v. Thyssen-Bornemisza Collection Found.*,
   No. 20-1566, 2022 WL 1177497 (U.S. Apr. 21, 2022) .....................................................11

*Dunefsky v. Montefiore Hosp. Med. Ctr.*,
   162 A.D.2d 300 (1st Dep't 1990) ......................................................................................16

*Est. of Heiser v. Islamic Republic of Iran*,
   466 F. Supp. 2d 229 (D.D.C. 2006) ....................................................................................5

*Fed. Republic of Germany v. Philipp*,
   141 S. Ct. 703 (2021)............................................................................................................8

*Flatow v. Islamic Republic of Iran*,
   999 F. Supp. 1 (D.D.C. 1998).............................................................................................19

*Grosshandels-Und Lagerei-Berufsgenossenschaft v. World Trade Ctr. Props., LLC*,
   435 F.3d 136 (2d Cir. 2006)................................................................................................14

iii

**TABLE OF AUTHORITIES**
*(continued)*

Page(s)

*Heslin v. County of Greene*,
    14 N.Y.3d 67 (2010) ................................................................................................16

*McKesson Corp. v. Islamic Republic of Iran*,
    672 F.3d 1066 (D.C. Cir. 2012) ................................................................................9

*Neumeier v. Kuehner*,
    31 N.Y.2d 121 (1972) ............................................................................................14

*Phillips v. City of Middletown*,
    No. 17-CV-5307 (CS), 2018 WL 4572971 (S.D.N.Y. Sept. 24, 2018) ..................14

*Roth v. Islamic Republic of Iran*,
    78 F. Supp. 3d 379 (D.D.C. 2015) ..........................................................................19

*In re Sept. 11 Litig.*,
    802 F.3d 314 (2d Cir. 2015) ....................................................................................23

*In re Terrorist Attacks on Sept. 11, 2001*,
    298 F. Supp. 3d 631 (S.D.N.Y. 2018) ....................................................................12

*In re Terrorist Attacks on Sept. 11, 2001*,
    No. 03 MDL 1570 (GBD), 2011 WL 13244047 (S.D.N.Y. Dec. 22, 2011)
    (ECF No. 2515) ............................................................................................. *passim*

*Valore v. Islamic Republic of Iran*,
    700 F. Supp. 2d 52 (D.D.C. 2010) ...................................................................19, 20

**Statutes**

28 U.S.C. § 1330(a) ........................................................................................................13

28 U.S.C. § 1604............................................................................................................9

28 U.S.C. § 1605A ............................................................................................. *passim*

28 U.S.C. § 1605B ............................................................................................. *passim*

28 U.S.C. § 1606............................................................................................................11

28 U.S.C. § 1608(a) ....................................................................................................1, 24

Air Transportation Safety and System Stabilization Act ("ATSSSA").  Pub. L.
    No. 107-42, 115 Stat. 230 (2001) (codified as amended at 49 U.S.C. § 40101) ....................23

iv

## TABLE OF AUTHORITIES
### *(continued)*

**Page(s)**

N.Y. Est. Powers & Trusts Law § 5-4.1 ..........................................................................14

N.Y. Est. Powers & Trusts Law § 11-3.2 (b)................................................................16

v

## INTRODUCTION

A discrete number of non-U.S. Nationals were murdered during the September 11, 2001 attacks. The undersigned represents citizens from many nations who seek parity with their U.S. National counterparts.  Terrorism does not distinguish based on citizenship nor should this Court. A non-U.S. National killed on 9/11, through the estate's personal representative, brings this motion for judgment of default against the Islamic Republic of Iran ("Iran").

For the reasons set forth below, the statements contained in the Declaration of Jerry S. Goldman, Esq., with exhibits appended thereto ("Goldman Declaration"), which is being filed contemporaneously with this Memorandum of Law, as well as those set forth in prior motions for damages made on behalf of other *O'Neill* wrongful death plaintiffs, a non-U.S. National Plaintiff in the above-captioned matter who is identified in Exhibit A[1] to the Goldman Declaration ("Moving Plaintiff") (which is Exhibit B to the Proposed Order), by and through counsel, Anderson Kill P.C., respectfully moves this Court for an Order:

(1) determining that service of process in the above-captioned matter was properly effected upon Iran in accordance with 28 U.S.C. § 1608(a) for sovereign defendants; AND,

(2) finding that the Court has subject-matter jurisdiction over the common law claims of the Moving Plaintiff pursuant to 28 U.S.C. § 1605B; AND,

(3) determining that this Court has subject-matter jurisdiction over Iran under the common law for actions arising out of wrongful death based on the intentional acts of

---

[1] The plaintiff listed in Exhibit A is the personal representative of a 9/11 decedent who is submitting claims for compensatory damages as a result of the 9/11 decedent's death.  As noted below, the personal representative has provided the undersigned counsel with proof that she has been appointed by the court as the personal representative of the decedent's estate. Goldman Declaration at ¶¶ 5-6.

international terrorism perpetrated on September 11, 2001 that intentionally targeted innocent civilians resulting in death; AND

(4) entering a judgment as to liability for the Moving Plaintiff identified in Exhibit A for the estate's common law claims; AND,

(5) for the Moving Plaintiff identified in Exhibit A, finding Iran jointly and severally liable with the Taliban and awarding the Moving Plaintiff a damages judgment against Iran in the same amounts previously awarded by this Court to various similarly situated plaintiffs in *Burnett*, *Havlish*, *Ashton*, *Bauer*, *O'Neill*, and other cases; AND,

(6) awarding the estate of the 9/11 decedent, through their personal representative and on behalf of all survivors and all legally entitled beneficiaries and family members of such 9/11 decedent, as identified in Exhibit A, compensatory damages for pain and suffering in the same per estate amount previously awarded by this Court regarding other estates of decedents killed in the September 11th attacks, as set forth in Exhibit A; AND,

(7) awarding compensatory damages to the Moving Plaintiff identified in Exhibit A for the 9/11 decedent's pain and suffering in the amount of $2,000,000, as set forth in Exhibit A; AND,

(8) on behalf of the Moving Plaintiff, awarding the estate of the 9/11 decedent, through their personal representative and on behalf of all survivors and all legally entitled beneficiaries and family members of such 9/11 decedent, as identified in Exhibit A, an award of economic damages in the amount as set forth in Exhibit A; AND,

(9) awarding the Moving Plaintiff prejudgment interest at the rate of 4.96 percent per annum, compounded annually for the period from September 11, 2001 until the date of the judgment for damages; AND,

(10) granting the Moving Plaintiff permission to seek punitive damages, economic damages, and other appropriate damages, at a later date; AND,

(11) granting permission for all other Plaintiffs in these actions not appearing in Exhibit A to submit applications for damages awards in later stages, to the extent such awards have not previously been addressed; AND,

(12) granting to the Moving Plaintiff such other and further relief as this honorable court deems just and proper.

The Moving Plaintiff identified in Exhibit A seeks a liability determination and default judgment as to the estate's common law claims of wrongful death and survival. The Moving Plaintiff seeks a damages determination consistent with the determinations of prior subsets of the plaintiffs in the *O'Neill* cases that were granted judgments. Moving Plaintiff, like thousands of other similarly situated plaintiffs, requests entry of final default judgment against Iran in the amount indicated in Exhibit A.

The only material difference between the thousands of Plaintiffs with damages judgments against Iran and the Moving Plaintiff is that the Moving Plaintiff was not a U.S. National on September 11, 2001. Nonetheless, the Moving Plaintiff's claims against Iran are fully supported by existing record evidence that should be applied to Moving Plaintiff's common law claims for wrongful death and survival. Thus, this Court should extend its liability determination and enter a damages judgment against Iran for Moving Plaintiff's common law claims in accordance with

3

28 U.S.C. § 1605B ("JASTA") and applicable common law, as it did for Manu Dhingra at ECF

No. 9666 at 8 and numerous other non-U.S. Nationals at ECF No. 9931.

**DISCUSSION**

**(1)    PROCEDURAL BACKGROUND**

    **A. Applicable Orders**

       This motion is being submitted in accordance with various procedural orders entered by

this Court, and the form of this motion and the relief requested herein are intended to comply

with various Orders of this Court, including the following:

       a.     The Court's January 24, 2017 Order, ECF No. 3435,[2] requiring that "[a]ll
further motions for final judgment against any defaulting defendant shall be
accompanied by a sworn declaration attesting that the attorney has (1) complied
with the due diligence safeguards [referenced in Section II.D. of the January 23,
2017 letter from the Plaintiffs' Executive Committee (ECF No. 3433)] and (2)
personally verified that no relief has previously been awarded to any plaintiff
included in the judgment (or, if relief has been awarded, the nature of that relief)."
For compliance with the required sworn declaration, please see paragraph 11
below.

       b.     The Court's October 14, 2016 Order, ECF No. 3363, concerning the
amounts of solatium damage awards.

       c.     The Court's October 14, 2016 Order, ECF No. 3362, related to the cases
captioned as *Bauer v. Al Qaeda Islamic Army*, 02-CV-7236 (GBD)(SN) and
*Ashton v. al Qaeda Islamic Army*, 02-CV-6977 (GBD)(SN).

       d.     The Court's October 28, 2019 Order, ECF No. 5234, setting forth updated
procedural rules.

       e.     The Court's October 28, 2019 Order, ECF No. 5338, setting forth the
scheduling order.

       f.     The Court's May 5, 2022 Order, ECF No. 7963, setting forth procedures
for filing expert reports submitted in support of default judgments.

---

[2] All ECF numbers are to the MDL docket unless stated otherwise.

4

g.      The Court's September 22, 2023 Order, ECF No. 9355, setting forth procedures for default judgment motions.

**B.  Related Cases**

Relying on evidence and arguments[3] submitted by plaintiffs in *In re Terrorist Attacks on September 11, 2001*, 03-md-1570, the consolidated multidistrict litigation arising out of the September 11th attacks, this Court, on December 22, 2011, and again on August 31, 2015, granted Orders of Judgment on Liability in favor of certain of the *Havlish*, *Ashton*, *O'Neill*, *Federal Insurance*, and *Hoglan* groups of plaintiffs against Iran (*see* ECF Nos. 2516, 3014, 3016, 3020, 3020-23).  Subsequently, other liability findings were made for additional *O'Neill* plaintiffs. After granting *Havlish* plaintiffs' Order of Default Judgment on Liability, this Court considered the issue of damages suffered by the *Havlish* plaintiffs and their decedents. Upon the *Havlish* plaintiffs' submissions, on October 3, 2012 this Court found, among other things, that "Plaintiffs may recover for [, inter alia,] solatium…in an action under Section 1605A. 28 U.S.C. § 1605A(c)(4). In such an action, …family members can recover solatium for their emotional injury; and all plaintiffs can recover punitive damages." ECF No. 2623 at 2-3, quoting *Valore v. Islamic Republic of Iran*, 700 F. Supp. 2d 52, 83 (D.D.C. 2010). This Court also found that the following solatium awards for family members are appropriate, as an upward departure from the framework in *Est. of Heiser v. Islamic Republic of Iran*, 466 F. Supp. 2d 229 (D.D.C. 2006).

---

[3] In each of the Orders of Judgment regarding plaintiffs' claims against Iran in the *In re Terrorist Attacks on September 11, 2001* multidistrict litigation, the Court premised its determination "[u]pon consideration of the evidence submitted by the Plaintiffs in filings with this Court on May 19, 2011, July 13, 2011, and August 19, 2011, and the evidence presented at the December 15, 2011, hearing on liability, together with the entire record in this case." ECF Nos. 2516, 3014, 3016, 3020-22; *see also* ECF No. 3023 (substantially similar language).

| Relationship of Decedent | Solatium Award |
|---|---|
| Spouse | $12,500,000 |
| Parent | $8,500,000 |
| Child | $8,500,000 |
| Sibling | $4,250,000 |

ECF No. 2623 at 4.

The Court has applied the same solatium values to claims of other solatium plaintiffs in *Burnett* (ECF Nos. 3666, 4023, 4126, 4146, 4175, 5061, 5062, 5087, 5138, and 5356) and other solatium plaintiffs in other cases coordinated in the *In re Terrorist Attacks on September 11, 2001* multidistrict litigation. *See*, e.g., ECF Nos. 3175 at 2, 3300 at 1, 3358 at 9, 3363 at 16, 3399, and 3977 at 7.

In that same decision in *Havlish*, this Court also found that Plaintiffs are entitled to punitive damages under the Foreign Sovereign Immunities Act ("FSIA") in an amount of 3.44 multiplied by their compensatory damages award. ECF No. 2623 at 5. The Court has applied that 3.44 multiplier also to judgments in *Ashton*. *See* ECF No. 3175 at 3 (Report and Recommendation to apply 3.44 punitive multiplier); ECF No. 3229 at 1 (Order adopting in its entirety Report and Recommendation to apply 3.44 punitive multiplier). The Court applied the 3.44 punitive multiplier to the compensatory awards previously awarded in *Burnett*. ECF No. 3666. However, in *Hoglan*, another case in this multidistrict litigation, Magistrate Judge Netburn recommended that the plaintiffs' request for punitive damages be denied without prejudice. ECF Nos. 3358 at 11-16, 3363 at 28. Judge Daniels adopted Magistrate Judge Netburn's Report and Recommendation in its entirety. ECF Nos. 3383 at 2, 3384 at 6.

6

In the *Havlish* decision, this Court also found that prejudgment interest was warranted for the Plaintiffs' solatium damages. ECF No. 2623 at 5.  The *Havlish* plaintiffs sought application of a 4.96% interest rate, which the magistrate judge recommended (ECF No. 2619 at 13-14) and Judge Daniels adopted (ECF No. 2623 at 5). In *Ashton*, plaintiffs sought, and the magistrate judge recommended, application of a statutory nine percent simple interest rate for prejudgment interest. ECF No. 3175 at 7-8. Judge Daniels adopted the magistrate judge's report and recommendation and applied the nine percent interest rate in multiple instances in *Ashton* and *Bauer*. *See* ECF Nos. 3229 at 2; 3300 at 1, 3341 at 1. However, in *Hoglan*, Magistrate Judge Netburn recommended that the 4.96 percent rate for prejudgment interest should be applied to all solatium claims. ECF Nos. 3358 at 17-20, 3363 at 28-29. Judge Daniels adopted Judge Netburn's *Hoglan* Report and Recommendation in its entirety and applied an interest rate of 4.96 percent per annum, compounded annually. ECF Nos. 3383 at 2, 3384 at 6.  The Court applied that interest rate, 4.96 percent per annum, to other plaintiffs' awards in *Burnett*.

On March 26, 2024, this Court extended the Court's prior findings under 28 U.S.C. § 1605A to the common law claims of non-citizens in its decision which awarded Manu Dhingra a judgment at ECF No. 9666. On June 17, 2024, this Court extended the Court's prior findings under 28 U.S.C. § 1605A to the common law claims of numerous other non-citizens and awarded judgments to them at ECF No. 9931.

**C.  Iran Was Duly Served and Default Was Duly Entered.**

As set forth in Exhibit A to the Proposed Order, the Moving Plaintiff duly served Iran. The Clerk's Office, upon Plaintiffs' application, issued a Clerk's Certificates of Default.

7

**(2)    THE COURT HAS SUBJECT-MATTER JURISDICTION OVER MOVING PLAINTIFF'S CLAIMS AGAINST IRAN UNDER JASTA.**

While the victims of the terrorist attacks on September 11, 2001 were not solely U.S. Nationals, relief under the State Sponsored Terrorism exception to the FSIA is limited to U.S. Nationals or immediate family members (or functional equivalents) of U.S. National decedents. Nevertheless, this Court's jurisdiction reaches the claims of these non-Nationals who were injured or killed, and their family members, by virtue of the fact that the terrorist attacks took place on U.S. soil with the largest number of victims being injured or killed only blocks from this courthouse at the World Trade Center complex in lower Manhattan. The Moving Plaintiff identified on Exhibit A is the Personal Representative of the estate of a 9/11 decedent where the 9/11 decedent was known not to be a United States National on September 11, 2001.

The terrorists who carried out the attacks on September 11, 2001 did not differentiate their victims by nationality. Individuals working in the North Tower of the World Trade Center when it was hit were not somehow sequestered based on their citizenship status. The terrorists attacked the United States, and while the vast majority of those who were killed in the orchestrated attacks against the United States were U.S. Nationals, a significant percentage of the victims were not. This does not mean that they were treated differently by the terrorists or that their loved ones did not experience the grief and loss that U.S. Nationals did.

Moving Plaintiff's claims against Iran are predicated on the FSIA generally, and more specifically, JASTA. The FSIA "supplies the ground rules for 'obtaining jurisdiction over a foreign state in the courts' of the United States." *Fed. Republic of Germany v. Philipp*, 141 S. Ct. 703, 709 (2021) (citing *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 443 (1989)). Further, the FSIA is "purely jurisdictional in nature, and creates no cause of action."

8

*McKesson Corp. v. Islamic Republic of Iran*, 672 F.3d 1066, 1075 (D.C. Cir. 2012). However, the FSIA "starts with a premise of immunity and then creates exceptions to the general principle." *Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.*, 137 S. Ct. 1312, 1321 (2017) (internal quotations omitted) (citing *Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480 (1983)). Thus, a Court is required to find that one of the FSIA's exceptions applies to Iran to establish jurisdiction. *See* 28 U.S.C. § 1604 ("a foreign state shall be immune for the jurisdiction of the courts of the United States…except as provided in sections 1605-1607."). One exception, created in 1996 with the enactment of the Anti-terrorism and Effective Death Penalty Act, 28 U.S.C. § 1605, provides an exception to sovereign immunity when a foreign state has been officially designated as a state sponsor of terror by the United States.  Iran was designated a state sponsor of terrorism on January 19, 1984, and has remained a designee since. This Court has found jurisdiction over Iran and entered numerous default judgments in this case pursuant to that exception to the FSIA.

The Justice Against Sponsors of Terrorism Act, Pub. L. 114-222, now codified at 28 U.S.C. § 1605B ("JASTA"), confers jurisdiction to this Court to award damages to the estates of non-U.S. National decedents and non-U.S. national family members of those decedents. JASTA includes no requirement that common law claims can only be maintained by U.S. Nationals. In fact, JASTA simply states that "a foreign state shall not be immune from the jurisdiction of the courts of the United States in any case in which money damages are sought against a foreign state for physical injury to person or property or death occurring in the United States and caused by: 1) an act of international terrorism **in the United States;** and 2) **a tortious act or acts** of the foreign state, or of any official, employee, or agent of that foreign state while acting within the

9

scope of his or her office, employment, or agency, regardless where the tortious act or acts of the foreign state occurred." *See* § 1605B(b) (emphasis added). Clearly, Congress intended that the only requirements to maintain common law claims against a foreign sovereign under JASTA are that the attack *occurred in the United States* and that the foreign state committed a tort. These jurisdictional requirements are easily met here for the same reasons the Court previously found jurisdiction over Iran under 28 U.S.C. § 1605A: Namely, that "Plaintiffs have established by evidence satisfactory to the Court that the Islamic Republic of Iran provided material support and resources to al Qaeda for acts of terrorism, including the extrajudicial killing of the victims of the September 11, 2001 attacks" in "the World Trade Center, the Pentagon, and Washington, D.C. (Shanksville, Pennsylvania)." *See, e.g.*, *In re Terrorist Attacks on Sept. 11, 2001*, No. 03 MDL 1570 (GBD), 2011 WL 13244047, at *39-40 (S.D.N.Y. Dec. 22, 2011) (conclusions of law ¶¶ 18, 19, 23) (ECF No. 2515).

Plaintiffs also previously proved, and the Court previously found "a tortious act or acts of [Iran], or of any official, employee, or agent of [Iran]". For example, the Court found:

> [T]he Islamic Republic of Iran provided material support or resources . . . to al Qaeda generally. Such material support or resources took the form of, inter alia, planning, funding, facilitation of the hijackers' travel and training, and logistics, and included the provision of services, money, lodging, training, expert advice or assistance, safehouses, false documentation or identification, and/or transportation. Beyond the evidence that the Islamic Republic of Iran provided general material support or resources to al Qaeda, plaintiffs have established that Iran provided direct support to al Qaeda specifically for the attacks on the World Trade Center, the Pentagon, and Washington, DC (Shanksville, Pennsylvania), on September 11, 2001. Such material support or resources took the form of, inter alia, planning, funding, facilitation of the hijackers' travel and training, and logistics, and included the provision of services, money, lodging, training, expert advice or assistance, safehouses, false documentation or

10

identification, and/or transportation. Such provision of material support or resources by various Iranian officials, including, but not limited to, Iran's Supreme Leader the Ayatollah Ali Khamenei and his subordinates, by officers of the IRGC/Qods Force, by the MOIS, and by the intelligence apparatus of the Supreme Leader, was engaged in by Iranian officials, employees, or agents of Iran while acting within the scope of his or her office, employment, or agency.

*See, generally, id*. at ¶¶ 18-35. *See also* ECF No. 9931.

Plaintiffs here have clearly shown and the Court has already found "a tortious act or acts of" Iran and an act of international terrorism in the United States for purposes of finding subject-matter jurisdiction under JASTA.

Importantly, § 1605B acts as a pass through for state law claims.[4]  This Court so held in rejecting the Motion to Dismiss filed by the Republic of the Sudan. *See* ECF No. 7942 at 34 ("Nothing in § 1605B(b)'s text suggests that the jurisdictional grant is limited to 'U.S. nationals'—the phrase does not even appear in the subsection."); *see also id.* at 53-54 (rejecting argument that 1605B is not a "gateway," holding that "Plaintiffs' state law claims are not preempted."). It reaffirmed this finding in a recent prior judgment awarding other non-U.S. Nationals judgments against Iran. ECF No. 9931. Moving Plaintiff asserts common law claims for wrongful death and survival that this Court has jurisdiction to hear.

---

[4] *See Bank of New York v. Yugoimport*, 745 F.3d 599, 609 n.8 (2d Cir. 2014) ("The FSIA operates as a pass-through, granting federal courts jurisdiction over otherwise ordinary actions brought against foreign states. It provides foreign states and their instrumentalities access to federal courts only to ensure uniform application of the doctrine of sovereign immunity.'); *id.* ("The FSIA contains no express choice of law provision, but Section 1606 provides that a foreign sovereign 'shall be liable in the same manner and to the same extent as a private individual under like circumstances.' 28 U.S.C. § 1606."); *Cassirer v. Thyssen-Bornemisza Collection Found.*, No. 20-1566, 2022 WL 1177497, at *4 (U.S. Apr. 21, 2022) ("Section 1606 directs a 'pass-through' to the substantive law that would govern a similar suit between private individuals. . . . The provision thus ensures that a foreign state, if found ineligible for immunity, must answer for its conduct just as any other actor would.")

This Court recently granted a liability and damages judgment to Manu Dhingra, a non-U.S. National (at the time of 9/11) personal injury plaintiff in *Susan M. King, et al. v. Islamic Republic of Iran*, No. 1:22-cv-05193 (GBD)(SN) who sustained personal injuries in the September 11, 2001 terrorist attacks. *See* ECF No. 9666. Magistrate Judge Netburn provided the following recommendation to the District Court (adopted in full at ECF No. 9666) that 28 U.S.C. § 1605B(b)'s requirements were satisfied (to provide the Court with subject-matter jurisdiction:

> [The victims'] claims plainly satisfy many of 28 U.S.C. § 1605B(b)'s requirements. [They are] seeking "money damages" from Iran. [28 U.S.C. § 1605B(b)"; *see* No. 15-cv-09903, ECF No. 53 at 1082-88 (*Burnett* complaint [at issue in this motion]). Those damages are for "physical injur[ies]" [they] sustained "in the United States." 28 U.S.C. § 1605B(b); *see* ECF No. 9154-7 at ¶¶ 5-33; No. 15-cv- 09903, ECF No. 53 at 1081. [Their] injuries were "caused" by the 9/11 Attacks. 28 U.S.C. § 1605B(b); *see* ECF No. 9154-7 at ¶¶ 5-33; No. 15-cv-09903, ECF No. 53 at 1081. And the 9/11 Attacks were "act[s] of international terrorism" on U.S. soil. 28 U.S.C. § 1605B(b); *see* No. 15-cv-09903, ECF No. 53 at 1081.
>
> One element of 28 U.S.C. § 1605B(b) merits closer attention: the requirement that "a tortious act or acts of the foreign state" "caused" the injury. For FSIA purposes, "a tortious act" includes the "knowing or deliberately indifferent provision of material support to terrorists," and "cause" incorporates "the traditional test for proximate causation[:] . . . 'some reasonable connection between the act or omission of the defendant and the damage which the plaintiff has suffered.'" *In re Terrorist Attacks on Sept. 11, 2001*, 298 F. Supp. 3d 631, 643, 645 (S.D.N.Y. 2018) (quoting *Owens v. Republic of Sudan*, 864 F.3d 751, 794 (D.C. Cir. 2017)). In simple terms, there must be a link between a state's support for terrorism and the plaintiff's injuries. The Court heard evidence linking Iran to the 9/11 Attacks in a 2011 hearing. Based on that record, it found that Iran was 'aware[] of[] and involve[d] in[]" al Qaeda's plans and provided "material support" to the terrorist group. *In re 9/11*, 2011 WL 13244047, at *26, 41. It concluded that Iran's "material support" proximately "caused" the 9/11 Attacks and, by extension, the resulting injuries. *Id.* at *41; *see* ECF No. 9154-7; *cf.* ECF No. 9274 at 3 (concluding that Iran proximately caused latent injuries). The evidence supporting those findings establishes the last element of 28 U.S.C. § 1605B(b)—that Iran's "tortious act[s]" "caused" [plaintiffs'] injuries. *See* ECF Nos. 2431, 2432, 2433, 2473.

*See* ECF No. 9506 at 6-7. Magistrate Judge Netburn correctly held that the jurisdictional threshold for establishing subject-matter jurisdiction over the Iran Defendants was met under 28

U.S.C. § 1605B(b), and that the Court should exercise subject-matter jurisdiction. Magistrate

Judge Netburn's entire Report & Recommendation was subsequently adopted by the Court. *See,*

*generally,* ECF No. 9666; *id.* at 4 ("Therefore, Plaintiff has established the applicability of the

FSIA exception set forth in 28 U.S.C. § 1605B(b), and this Court has subject-matter jurisdiction

under 28 U.S.C. § 1330(a)."). And this Court made a similar finding with respect to similarly

situated non-U.S. Nationals at ECF No. 9931. Accordingly, this Court has subject-matter

jurisdiction over the Moving Plaintiff's claims under 28 U.S.C. § 1330(a).

**(3)    IRAN IS LIABLE TO MOVING PLAINTIFF UNDER APPLICABLE COMMON LAW.**

Moving Plaintiff seeks a determination that Iran is liable to the non-U.S. National

Plaintiff identified on Exhibit A based on the same record evidence, and findings of fact and

conclusions of law already made by the Court and seek an extension of liability judgments

rendered under Section 1605A to the plaintiff's wrongful death and survival common law claims,

as the Court previously determined for Manu Dhingra at ECF No. 9666 and other non-U.S.

Nationals at ECF No. 9931. As discussed below, New York law applies to the Moving Plaintiff's

claims because the 9/11 decedent died in New York. As this Court correctly held:

> Once a foreign state is shed of its presumptive immunity under the FSIA, "it is subject to
> the same rules of liability as a private party. ... [A] foreign state, if found ineligible for
> immunity, must answer for its conduct just as any actor would." *Cassirer* v. *Thyssen-*
> *Bornemisza Collection Found.,* 596 U.S. 107, 114 (2022). "[T]he FSIA was never
> 'intended to affect the substantive law determining the liability of a foreign state or
> instrumentality' deemed amenable to suit." *Id.* at 113-14 (quoting *First Nat'l City Bank*
> v. *Banco Para El Comercio Exterior De Cuba,* 462 U.S. 611, 620 (1983)). Thus,
> Magistrate Judge Netburn did not err in determining that Iran is subject to suit for state
> tort claims, including assault and battery. *(See* Report at 10.)

ECF No. 9666 at 5. Accordingly, as set forth below, Iran is liable to the Moving Plaintiff for

common law wrongful death and survival claims.

A.    **New York Law Applies**

Federal courts must apply the choice of law rules of the state in which they sit, which in this case is New York. *Armstead v. National RR Passenger Corp.*, 954 F. Supp. 111, 112 (1997) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941)). Here, under New York conflicts law, the law of the place of injury would apply. *See Neumeier v. Kuehner*, 31 N.Y.2d 121, 128 (1972) (If law is "conduct regulating" apply law of place of injury. If law is "loss-allocating" and plaintiff and defendants do not reside in same domicile, which is the case here, generally use place of injury); *Grosshandels-Und Lagerei-Berufsgenossenschaft v. World Trade Ctr. Props., LLC*, 435 F.3d 136, 137 (2d Cir. 2006). ("Given that wrongful death and survival actions relate to loss allocation, . . . and that the parties are domiciled in a number of different states, the presumption is that New York's rules apply."). Here, New York common law applies because the 9/11 decedent listed in Exhibit A died in New York.

B.  **Iran Is Liable to the Moving Plaintiff for Wrongful Death Under New York Law.**

Moving Plaintiff properly asserts a wrongful death claim under New York law since the estate can establish (1) a wrongful act, neglect or default (2) which caused the decedent's death. N.Y. Est. Powers & Trusts Law § 5-4.1. Further, the Moving Plaintiff has proper standing to bring a wrongful death claim under New York law, since she is the personal representative of a 9/11 decedent estate and was duly appointed by a court of proper jurisdiction. *Id.*

The Moving Plaintiff's wrongful death claims brought under New York law are derivative of assault and battery claims. *Phillips v. City of Middletown*, No. 17-CV-5307 (CS), 2018 WL 4572971, at *11 (S.D.N.Y. Sept. 24, 2018). And as discussed herein, this Court found Iran liable to Manu Dhingra for assault and battery. ECF No. 9666 at 8. This Court also found

14

Iran liable for wrongful death for various non-U.S. National who died on 9/11. ECF No. 9931 at 3-4.

This Court previously found that Iran's "provision of material support or resources" to al Qaeda in connection with the 9/11 Attacks caused the extrajudicial killings of plaintiffs. *See In re Terrorist Attacks on Sept. 11, 2001*, No. 03 MDL 1570 (GBD), 2011 WL 13244047 (S.D.N.Y. Dec. 22, 2011), ECF No. 2515 (conclusions of law ¶¶ 18-35); *see also id.* at ¶ 28 ("The IRGC has a special foreign division, known as the *Qods* (or *Quds* or "Jerusalem") Force, which is the arm of the IRGC that works with militant organizations abroad and promotes terrorism overseas."); *id.* at ¶ 29 ("For more than two decades, the IRGC has provided funding and/or training for terrorism operations targeting American citizens, including support for [ ] al Qaeda. In doing so, the IRGC is acting as an official agency whose activities are controlled by the Supreme Leader. [ ]. Terrorism training provided to [ ] al Qaeda by the IRGC is an official policy of the Iranian government."); *id.* at ¶ 30 ("The U.S. Treasury Department has designated the *IRGC-Qods* Force as a "terrorist organization" for providing material support to the Taliban and other terrorist organizations, and the U.S. State Department has designated the IRGC as a "foreign terrorist organization."); *id.* at ¶ 34 ("Many of the U.S. State Department reports on global terrorism over the past twenty-five (25) years refer to [Iran's Ministry of Information and Security ("MOIS")] as Iran's key facilitator and director of terrorist attacks."); *id.* at ¶ 40 ("Iranian government ministries are responsible for carrying out the policies of the Iranian government, and the Iranian government's policies include state support for terrorism. Although much of that state support is done through clandestine means, the government ministries have also been involved in state support for terrorism, generally, and in support for al Qaeda [ ], in particular."); *id.* at ¶ 77 ("In 1991 or 1992, discussions in Sudan between al Qaeda and Iranian operatives led to an informal agreement to cooperate in providing support for actions

15

carried out primarily against Israel and the United States."); *id.* at ¶ 78 ("Thereafter, senior al Qaeda operatives and trainers traveled to Iran to receive training in explosives. Osama bin Laden also sent senior aides to Iran for training with the IRG [ ]."). The Court should extend these factual findings to Moving Plaintiff here by finding that the 9/11 decedent referenced in Exhibit A (1) died during the 9/11 attacks and (2) that his death was caused by a wrongful act of Iran. (These findings also rise above the level of mere negligence).

Accordingly, this Court should find Iran liable to Moving Plaintiff for the estate's wrongful death claim.

**C. Iran Is Liable to Moving Plaintiff for Survival Under New York Law.**

New York has the following survival statute:

| Survival Statute | |
| --- | --- |
| New York[5]: | No cause of action for injury to person or property is lost because of the death of the person in whose favor the cause of action existed. For any injury an action may be brought or continued by the personal representative of the decedent. |

Under New York law, "a personal injury action on behalf of the deceased under EPTL 11-3.2(b) seeks recovery for conscious pain and suffering of the deceased and any damages awarded accrue to the estate." *Heslin v. County of Greene*, 14 N.Y.3d 67, 76-77 (2010). Courts have held that a survival action (or an action for conscious pain and suffering) is separate and distinct from a wrongful death cause of action. *Dunefsky v. Montefiore Hosp. Med. Ctr.*, 162 A.D.2d 300 (1st Dep't 1990). Here, Iran's actions caused the deceased victim identified in Exhibit A severe and intense harmful bodily contact, personal injury, and battery prior to their

---

[5] N.Y. Est. Powers & Trusts Law § 11-3.2 (b).

16

death, as described in the *Burnett* complaint that has been incorporated by reference into Moving

Plaintiff's short form complaint against Iran. *See* Complaint, 15-cv-09903, ECF No. 53, dated

Feb. 8, 2016, at ¶¶ 5067-5070 (incorporated by reference into short form complaints). As a result

of Iran's tortious conduct, *see In re Terrorist Attacks on Sept. 11, 2001*, No. 03 MDL 1570

(GBD), 2011 WL 13244047 (S.D.N.Y. Dec. 22, 2011) (*see*, *supra* at 25-26) (ECF No. 2515),

Moving Plaintiff in Exhibit A is entitled to survival damages. *See* ECF No. 9666 (awarding

Manu Dhingra a damages judgment for assault and battery); ECF No. 9931 at 3-4 (awarding

various non-U.S. Nationals damages judgments based on their survival claims).

**(4)    THE COURT SHOULD ENTER DAMAGES AWARDS AGAINST IRAN AND IN FAVOR OF MOVING PLAINTIFF IN AMOUNTS PREVIOUSLY AUTHORIZED.**

    **A.    Background**

Moving Plaintiff now respectfully requests that this Court grant the estate listed in

Exhibit A a judgment awarding the estate (1) compensatory damages for the plaintiff on Exhibit

A for pain and suffering in the same per estate amount previously awarded by this Court

regarding other estates of decedents killed in the terrorist attacks on September 11, 2001; (2)

economic damages for the plaintiff so designated on Exhibit A as set forth in the expert report

attached as Exhibit B to the Goldman Declaration; (4) prejudgment interest at the rate of 4.96

percent per annum, compounded annually for the period from September 11, 2001 until the date

of the judgment; (3) permission for Moving Plaintiff to seek punitive damages, economic

damages, or other damages at a later date; and (4) for all other Plaintiffs not appearing on Exhibit

A, to submit applications for damages awards in later stages, to the extent such awards have not

previously been addressed.

Plaintiff identified in Exhibit A is the estate of a victim who perished on 9/11, with claims asserted by the estate's personal representative, as demonstrated by documentary evidence in the form of official documents from probate and administration proceedings from Surrogate's Court, Probate Court, Orphan's Court, and similar judicial bodies. *See* Goldman Declaration at ¶¶ 5-6.

With respect to the estate plaintiff on Exhibit A, the personal representative has provided the undersigned counsel with proof that she has been appointed by the court as the personal representative of the 9/11 decedent's estate. This Court should adopt and apply the damages procedure for non-U.S. National Plaintiff's § 1605B claims that has been applied numerous times in this case to actions maintained under § 1605A. The Court previously adopted the same damages rubric form personal injury claims when it granted judgment in favor of Manu Dhingra and when it granted a damages judgment for various non-U.S. Nationals at ECF No. 9931. Equity dictates that non-U.S. National Plaintiffs be entitled to the same damages regime as had been applied to § 1605A claims throughout this case. *See* ECF No. 2618 at 14 (awarding *Havlish* plaintiffs common law damages against non-sovereign defendants in same amounts as § 1605A claims against Iran "under traditional tort principles" even though *Havlish* plaintiffs did not maintain Anti-Terrorism Act claims against these defendants and Section 1605A claims were inapplicable as to these defendants).

### B. Estate Pain and Suffering Damages

As noted above, the plaintiff identified in Exhibit A includes the personal representative of the estate of an individual who was killed in the 9/11 Attacks. This Court previously assessed the entitlement and value of pain and suffering awards to estates for their decedents' deaths in this litigation. ECF No. 2618 at 7-9. For the fairness considerations underpinning the Court's

18

decision to award Manu Dhingra a judgment amount based on "the preexisting personal injury damages framework applies to non-U.S. nationals as well," ECF No. 9666 at 9, the same fairness considerations dictate that the $2 million judgments awarded to U.S. national 9/11 decedent estates for conscious pain and suffering damages should apply equally to the non-U.S. national 9/11 decedent estate herein.  And this Court previously so held for numerous non-U.S. Nationals at ECF No. 9931. Accordingly, the estate set forth in Exhibit A respectfully requests that the Court grant an award for the decedent's pain and suffering in the amount of Two Million Dollars ($2,000,000) per estate. *See id.* at 9; ECF No. 2624 at 1, 3-4 (Judge Daniels awarding $2,000,000 per estate).  *See Goldman Declaration* at ¶ 15.

### C.    Estate Economic Damages

The FSIA specifically provides for economic damages. *See* 28 U.S.C. § 1605A(c).  The economic damages provision is "designed to compensate [a] decedent's heirs-at-law for economic losses which result from [the] decedent's premature death." *Flatow v. Islamic Republic of Iran*, 999 F. Supp. 1, 27 (D.D.C. 1998).  Accordingly, "the beneficiaries of each decedent's estate [are]…entitled to recover the present value of economic damages, including lost wages that the decedents might reasonably have been expected to earn but for their wrongful deaths." *Valore*, 700 F. Supp. 2d at 81-82 (D.D.C. 2010), citing *Heiser*, 466 F.Supp.2d at 229.  Thus, for example, United States District Court Judge Royce C. Lamberth, in a series of decisions issuing final judgments Iran under the FSIA, has held Iran "liable for the economic damages caused to decedents' estates." *Roth v. Islamic Republic of Iran*, 78 F. Supp. 3d 379, 399-400 (D.D.C. 2015), quoting *Valore*, 700 F.Supp.2d at 78.[6]

---

[6] In adopting this estate-accumulations calculation, Judge Lamberth recognized that case law under the FSIA was "develop[ing]…a federal standard" and looked to the law of the District of Columbia, which it

Previously, this Court awarded economic damages in prior Iran cases for the "economic losses stemming from the wrongful death of the decedent[.]" *See* ECF No. 2623 at 2-3. In doing so, it adopted the economic loss calculations set forth in the plaintiffs' economic expert reports.

The estate set forth in Exhibit A, which provided an economic expert report, transmitted to the Court in the Goldman Declaration, seeks economic damages, similar to the plaintiffs in the prior Iran cases in this Court under the standards set in the District of Columbia cases cited herein. Goldman Declaration at ¶¶ 16-22.

As described at length in the Goldman Declaration, in these cases, plaintiffs retained the services of an expert, John F. Beauzile, who possesses a Master's Degree in Actuarial Science from Columbia University ("Expert"), to evaluate the economic losses resulting from decedent's death as a result of the 9/11 attacks. Goldman Declaration at ¶¶ 19-22.

As described in more detail in the Goldman Declaration, and the Expert's Declaration (which is Exhibit B to the Goldman Declaration), we obtained, generally through a Freedom of Information Act ("FOIA") request, entire September 11th Victim Compensation Fund ("VCF") files for a substantial number of the *O'Neill* plaintiffs.[7] Those files, along with other materials provided by the clients, contained various economic expert reports, VCF applications, VCF work papers and distribution plans, VCF determinations, underlying economic documents, and the like. Using methodology and assumptions described in his declaration, relying on earlier expert reports, determinations by the VCF, and other documents, the Expert prepared an up-to-date

---

concluded was "an appropriate model" to adopt and which calculated economic damages as the loss of accretions to the decedent's estate. *Valore*, 700 F.Supp. 2d at 82.

[7] We are still awaiting receipt of additional files which has adversely become impacted by both "normal" delays in receiving responses to FOIA requests and COVID.

economic loss expert report, a copy of which is deemed appended to the Expert's Declaration (Exhibit B) and is being filed on ECF with access restricted to the Court pursuant to the Court's May 5, 2022 Order, ECF No. 7963, setting forth procedures for filing expert reports in support of default judgments.

Based on the foregoing, the Moving Plaintiff respectfully asks that this Court award economic damages to the estate set forth in Exhibit A in the amounts stated therein, as supported by the expert report and as the Court previously awarded to non-U.S. Nationals at ECF No. 9931.

### D.    Punitive Damages

Moving Plaintiff is also entitled to punitive damages. In the *Havlish* Report and Recommendation on damages, the magistrate judge explained that a "3.44 ratio 'has been established as the standard ratio applicable to cases arising out of' terrorist attacks." ECF No. 2618 at 13 (quoting *Est. of Bland v. Islamic Republic of Iran*, 831 F. Supp. 2d 150, 158 (D.D.C. 2011)). This Court adopted that recommendation and awarded punitive damages on each compensatory damages category at a ratio of 3.44 (punitive) to 1 (compensatory). ECF No. 2623 at 2. The Court has applied that ratio to awards for plaintiffs in other related cases. *See, e.g.*, ECF No. 3175 at 3 (Magistrate Judge Maas Report and Recommendation to apply a 3.44 punitive multiplier); ECF No. 3229 at 1 (Judge Daniels adopting in its entirety Judge Maas's Report and Recommendation to apply a 3.44 multiplier); ECF No. 3300 at 1 and Exhibit A (Judge Daniels applying 3.44 punitive multiplier to claims in *Ashton*).

However, in *Hoglan*, another case in the *In re Terrorist Attacks on September 11, 2001* multidistrict litigation, Magistrate Judge Netburn recommended that the plaintiffs' request for punitive damages be denied without prejudice. ECF No. 3363 at 28. Judge Daniels adopted

Magistrate Judge Netburn's Report in its entirety, denying without prejudice the plaintiffs' request for punitive damages.  ECF No. 3384 at 6.

In light of the Court's decision in related litigation to defer determination of punitive damage issues until a later stage of the litigation, Moving Plaintiff herein requests permission to address the issue of punitive damages at a later date.  *See*, *e.g.*, ECF No. 3666 (Judge Daniels' Order in *Burnett* authorizing plaintiffs to make an application for punitive damages at a later date consistent with any future rulings of the Court).

### E.    Prejudgment Interest

An award of prejudgment interest is within the sound discretion of a trial court and is warranted when plaintiffs are delayed in recovering compensation for non-economic injuries caused by acts of terrorism.  *See Baker v. Socialist People's Libyan Arab Jamahirya*, 775 F. Supp. 2d 48, 86 (D.D.C. 2011).  This Court awarded the *Havlish* plaintiffs prejudgment interest at a rate of 4.96% on their pain and suffering damages awards, to be calculated from September 11, 2001, until the date of judgment. ECF No. 2618 at 13-14.  This Court, recognizing that prejudgment interest was appropriate in cases such as these cases, adopted the magistrate judge's reasoning, finding that an award of prejudgment interest was appropriate and accepting the rate of 4.96%, as proposed by the *Havlish* plaintiffs' expert.

After the *Havlish* award, plaintiffs in *Ashton* and *Bauer* proposed, and the Court agreed, that prejudgment simple interest at the New York State statutory rate of nine percent per annum was appropriate in cases where the injuries arose in New York and the prejudgment interest used in *Havlish*, 4.96 percent per annum, compounded annually, should be reserved for only those cases where the injuries arose in other states.  *See* ECF Nos. 3229 at 2, 3300 at 1, 3341 at 1.

22

The Second Circuit has held that New York State's statutory prejudgment interest rate should apply to the damages awarded to World Trade Center complex leaseholders in their litigation against American Airlines and United Airlines brought under the federal Air Transportation Safety and System Stabilization Act ("ATSSSA"). Pub. L. No. 107-42, 115 Stat. 230 (2001) (codified as amended at 49 U.S.C. § 40101); *In re Sept. 11 Litig.*, 802 F.3d 314, 343 (2d Cir. 2015). In that case, the Second Circuit concluded that a federal cause of action under the ATSSSA must look to state rules concerning prejudgment interest. *Id.* Accordingly, the Second Circuit held that New York's statutory prejudgment interest rate of nine percent as opposed to a lower rate crafted under federal law, had to be applied to the plaintiffs' claims related to the 9/11 Attacks. *Id.*

However, more recently, in *Hoglan*, Magistrate Judge Netburn recommended that the 4.96 percent interest rate for prejudgment interest should be applied to all of the solatium claims. ECF No. 3363 at 28-29. Judge Daniels adopted Magistrate Judge Netburn's *Hoglan* Report in its entirety and applied the interest rate of 4.96 percent per annum, compounded annually to all of the claims. ECF No. 3384 at 6. Thereafter, in *Burnett/Iran II*, the Court again awarded prejudgment interest of 4.96 per annum, compounded annually.

The Court applied these decisions and awarded prejudgment interest of 4.96 per annum, compounded annually to Manu Dhingra as well in the non-citizen judgment and to other non-U.S. National judgments. ECF No. 9666 at 10; ECF No 9931 at 7.

In light of the Court's decisions in *Hoglan*, *Burnett*, the Manu Dhingra judgment, and the other non-U.S. National judgment (ECF No. 9931) applying the 4.96 percent rate to prejudgment interest, the Moving Plaintiff respectfully requests that the clerk be directed to award

23

prejudgment interest at the rate of 4.96 percent per annum, compounded annually, running from September 11, 2001, until the date of the judgment.

**(5)      CONCLUSION**

For all of the reasons herein, in the Goldman Declaration, and in the papers previously submitted to this Court in support of damages against Iran in this MDL, Moving Plaintiff respectfully requests that this Honorable Court enter an Order:

(1)      determining that service of process in the above-captioned matter was properly effected upon Iran in accordance with 28 U.S.C. § 1608(a) for sovereign defendants; AND,

(2)      finding that the Court has subject-matter jurisdiction over the common law claims of the Moving Plaintiff pursuant to 28 U.S.C. § 1605B; AND,

(3)      determining that this Court has subject-matter jurisdiction over Iran under the common law for actions arising out of wrongful death based on the intentional acts of international terrorism perpetrated on September 11, 2001 that intentionally targeted innocent civilians resulting in death; AND

(4)      entering a judgment as to liability for the Moving Plaintiff identified in Exhibit A for the estate's common law claims; AND,

(5)      for the Moving Plaintiff identified in Exhibit A, finding Iran jointly and severally liable with the Taliban and awarding the Moving Plaintiff a damages judgment against Iran in the same amounts previously awarded by this Court to various similarly situated plaintiffs in *Burnett*, *Havlish*, *Ashton*, *Bauer*, *O'Neill*, and other cases; AND,

(6)      awarding the estate of the 9/11 decedent, through their personal representative and on behalf of all survivors and all legally entitled beneficiaries and

24

family members of such 9/11 decedent, as identified in Exhibit A, compensatory damages for pain and suffering in the same per estate amount previously awarded by this Court regarding other estates of decedents killed in the September 11th attacks, as set forth in Exhibit A; AND,

(7)     awarding compensatory damages to the Moving Plaintiff identified in Exhibit A for the 9/11 decedent's pain and suffering in the amount of $2,000,000, as set forth in Exhibit A; AND,

(8)     on behalf of the Moving Plaintiff, awarding the estate of the 9/11 decedent, through its personal representative and on behalf of all survivors and all legally entitled beneficiaries and family members of such 9/11 decedent, as identified in Exhibit A, an award of economic damages in the amount as set forth in Exhibit A; AND,

(9)     awarding the Moving Plaintiff prejudgment interest at the rate of 4.96 percent per annum, compounded annually for the period from September 11, 2001 until the date of the judgment for damages; AND,

(10)     granting the Moving Plaintiff permission to seek punitive damages, economic damages, and other appropriate damages, at a later date; AND,

(11)     granting permission for all other Plaintiffs in these actions not appearing in Exhibit A to submit applications for damages awards in later stages, to the extent such awards have not previously been addressed; AND,

(12)     granting to the Moving Plaintiff such other and further relief as this honorable court deems just and proper.

Dated:  New York, New York
        July 22, 2024

Respectfully submitted,

/s/ Jerry S. Goldman
_____
ANDERSON KILL P.C.
Jerry S. Goldman, Esq.
Bruce E. Strong, Esq.
Alexander Greene, Esq.
1251 Avenue of the Americas
New York, NY 10020
Tel:  (212) 279-1000
Fax: (212) 278-1733
Email:   jgoldman@andersonkill.com
        bstrong@andersonkill.com
        agreene@andersonkill.com
*Attorneys for Plaintiffs*

26